UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN JENSEN, | No. 2:22-cv-00762-MCE-AC |
| Plaintiff, | |
| v. | **ORDER** |
| HARDWOODS SPECIALTY PRODUCTS US LP, et al., | |
| Defendants. | |

Plaintiff John Jensen ("Plaintiff") initiated this action in Sacramento County Superior Court seeking to recover from his former employer Defendant Hardwoods Specialty Products US LP ("Hardwoods") and Defendants Manuel Lavrador and Tim Clausen, both of whom supervised Plaintiff (collectively with Hardwoods, "Defendants"). Defendants removed the matter to this Court pursuant to its diversity jurisdiction under 28 U.S.C. § 1332. Presently before the Court is Plaintiff's Motion to Remand. ECF No. 7. For the following reasons, that Motion is DENIED.[1]

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. E.D. Local Rule 230(g).

1

# BACKGROUND[2]

Plaintiff began his employment with Hardwoods' predecessor Aura Hardwoods Lumber, Inc., ("Aura") in 2002, ultimately working his way up to the position of Assistant Branch Manager. Hardwoods purchased Aura in approximately November 2020 and Plaintiff was assured by the new management that his position would not change.

However, during the management transition process, the Regional Manager, Mike Couture, purportedly told Plaintiff that large corporations such as Hardwoods utilized certain methods to induce resignation (rather than involuntary termination) from employees who were deemed troublesome. Couture explained that, for example, a truck driver who had suffered an injury to his shoulder was placed on light duty (pursuant to reasonable accommodation) but intentionally assigned tedious duties or required to perform duties that required standing for the duration of the shift in order to induce resignation rather than to face legal exposure for an unlawful termination.

In the fall of 2020, prior to Hardwoods taking over Aura, Plaintiff advised Aura's Regional Manager that his wife was pregnant. He was thereafter provided a letter from the Director of Human Resources advising Plaintiff that he was eligible for a protected leave of absence that was scheduled for April 2021 through May 10, 2021. Given Couture's above comment regarding inducing resignation, Plaintiff was concerned about taking time off, but he felt an obligation to his wife and child to do so. In preparation for his leave, Plaintiff made every effort to ensure the temporary transition of his duties to a coworker.

Plaintiff's son was born on April 22, 2021, he took his leave of absence, and he returned to work on May 10, 2021. However, Plaintiff's wife experienced an extreme case of post-partum depression, which required Plaintiff to take a second leave of absence on June 7, 2021.

---

[2] The following recitation of facts is taken, primarily verbatim, from Plaintiff's Complaint. ECF No. 1-1.

Plaintiff met with Couture that day and informed him that Plaintiff needed the additional time due to the changed circumstances. Couture questioned Plaintiff about his intentions and informed Plaintiff that he was not pleased about Plaintiff's need for additional leave. Plaintiff assured both Couture and the Branch Manager, Defendant Clausen, that he would be returning to work. That evening, Plaintiff received an email from Couture with a letter attached indicating that Plaintiff was entitled to a protected leave of absence from June 7, 2021, through July 19, 2021. Plaintiff received no additional communication from anyone at Hardwoods.

On July 19, 2021, Plaintiff returned to work as scheduled. When he arrived at work, he was immediately informed that his desk had been assigned to another employee (although Plaintiff had previously been assigned the same desk for seven years) and that there was no place for him to sit. His personal belongings had been placed in a box, and his computer login credentials had been revoked. The new branch manager, Defendant Lavrador, told Plaintiff that because Lavrador had not heard from Plaintiff during his leave of absence, Lavrador assumed Plaintiff would not be returning. Lavrador later admitted that another employee had taken Plaintiff's position and "it [was] too late to go back." Compl., ECF No. 1-1, ¶ 18.

When Plaintiff made it clear he was returning to work that day and never had any intention of abandoning his position, Lavrador informed Plaintiff he could work as a truck driver or warehouse worker but could not return to his last position. Plaintiff had previously held those other positions prior to his promotion to Assistant Branch Manager, and those positions had different duties than his most recent role. Plaintiff also observed that Clausen, now a sales manager, behaved in a cold and indifferent manner and made it clear to Plaintiff that he was no longer welcome in the workplace.

Plaintiff is informed and believes that Lavrador and Clausen intentionally demeaned, harassed, and embarrassed Plaintiff upon his return to work in order to induce Plaintiff to resign, specifically because Plaintiff was a male employee who exercised his right to protected leave to care for his wife and child. Plaintiff is further

informed and believes that this animus was based on the previous cultural perception that only females should be entitled to such protected leave.  Accordingly, Plaintiff contends that Lavrador and Clausen intentionally created a hostile, demeaning, and uncomfortable workplace upon Plaintiff's return to work in order to induce Plaintiff's resignation.

After it became clear to Plaintiff that, at best, he would be required to work in a much less desirable and lower paying position, Plaintiff offered to provide a two-week notice of his intention to resign.  His resignation was accepted immediately, and his employment terminated.

According to Plaintiff, his protected leave of absence was a substantial motivating reason for the decision to remove him from his position and to create a situation in which Plaintiff would have no choice but to resign.  As a result, Plaintiff filed a complaint in state court alleging the following causes of action:  (1) violation of the California Family Right Act ("CFRA"), Cal. Gov. Code §§ 12945.1 et seq. against Hardwoods; (2) CFRA retaliation, id., against Hardwoods; (3) gender discrimination, Cal. Gov. Code §§ 12940 et seq. against Hardwoods; (4) harassment based on exercise of protected leave and gender in violation of Cal. Gov. Code §§ 12923, 12940, 12940(j)(3) against all Defendants; (5) failure to take steps reasonably necessary to prevent discrimination/retaliation in violation of Cal. Gov. Code § 12940 against Hardwoods; and (6) violation of public policy against Hardwoods.

**STANDARD**

When a case "of which the district courts of the United States have original jurisdiction" is initially brought in state court, the defendant may remove it to federal court "embracing the place where such action is pending." 28 U.S.C. § 1441(a).  There are two bases for federal subject matter jurisdiction:  (1) federal question jurisdiction under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332.  A district court

has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." Id. § 1331.  A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state . . . ." Id. § 1332(a)(1)–(2).

A defendant may remove any civil action from state court to federal district court if the district court has original jurisdiction over the matter.  28 U.S.C. § 1441(a).  "The party invoking the removal statute bears the burden of establishing federal jurisdiction." Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v. Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)).  Courts "strictly construe the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted).  "[I]f there is any doubt as to the right of removal in the first instance," the motion for remand must be granted.  Id.  Therefore, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court.  28 U.S.C. § 1447(c).

## ANALYSIS

Defendants removed this action to federal court under its diversity jurisdiction on the basis that Defendants Lavrador and Clausen, who like Plaintiff are domiciled in California, were fraudulently joined, destroying diversity.[3]  A fraudulently joined party is ignored for purposes of diversity jurisdiction. Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001); see also Grancare, LLC v. Thrower by and through Mills, 889 F.3d 543, 549 (9th Cir. 2018) (stating that "the purpose of the fraudulent joinder doctrine is to allow a determination whether the district court has subject matter jurisdiction").

---

[3] There is no dispute that the amount in controversy is met or that Plaintiff and Hardwoods are diverse.  Plaintiff seeks to recover the full measure of damages (e.g., general, special, and punitive) and attorneys' fees and costs, which will easily exceed the $75,000 threshold given Plaintiff's approximately $60,000 annual salary, exclusive of benefits.

5

There is a general presumption against fraudulent joinder, and the removing defendant has the burden to prove fraudulent joinder by clear and convincing evidence. Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir. 2007); see Hunter v. Philip Morris USA, 582 F.3d 1039, 1046 (9th Cir. 2009) (stating a defendant's burden to establish fraudulent joinder is a "heavy" one). Joinder will be deemed fraudulent where the plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state. Amarant v. Home Depot U.S.A., No. 1:13-CV-00245-LJO-SKO, 2013 WL 3146809, at *4 (E.D. Cal. June 18, 2013) (citing Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998)); McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987). Merely showing that an action is likely to be dismissed against that defendant does not demonstrate fraudulent joinder. Diaz v. Allstate Ins. Grp., 185 F.R.D. 581, 586 (C.D. Cal. 1998). "The standard is not whether plaintiffs will actually or even probably prevail on the merits, but whether there is a possibility that they may do so." Id. (citing Lieberman v. Meshkin, Mazandarani, No. C-96-3344 SI, 1996 WL 732506, at *3 (N.D. Cal. Dec. 11, 1996)); Hunter, 582 F.3d at 1044 (citing Florence v. Crescent Res., LLC, 484 F.3d 1293, 1299 (11th Cir. 2007)) ("If there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary.").

   Plaintiff moves to remand on the basis that he has stated viable causes of action for harassment against individual Defendants Lavrador and Clausen. Review of the Complaint belies that argument. Nor has Plaintiff shown by way of his instant Motion how he could possibly state a claim for harassment against either Lavrador or Clausen if given leave to do so.

   "To establish a prima facie case of a hostile work environment, [Plaintiff] must show that (1) [he] is a member of a protected class; (2) [he] was subjected to unwelcome harassment; (3) the harassment was based on [his] protected status; (4) the harassment unreasonably interfered with [his] work performance by creating an intimidating, hostile,

or offensive work environment; and (5) defendants are liable for the harassment." Ortiz v. Dameron Hospital Ass'n, 37 Cal. App. 5th 568, 581 (3d Dist. 2019). "[A]n employee claiming harassment based upon a hostile work environment must demonstrate that the conduct complained of was severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their [protected status]." Id. (quoting Miller v. Dept. of Corr., 36 Cal. 4th 446, 462 (2005) (internal quotation marks omitted and brackets in original). "The harassment must satisfy an objective and a subjective standard." Id. (quoting Miller, 36 Cal. 4th at 462). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Id. (quoting Miller, 36 Cal. 4th at 462) (internal quotation marks omitted).

The current complaint is devoid of facts capable of establishing harassment causes of action against the individual Defendants. The closest Plaintiff comes is alleging that Clausen behaved in a cold and indifferent manner. That allegation by itself, however, is insufficient to show conduct that is either severe or pervasive. This would not necessarily be fatal if Plaintiff could show that he could state claims against these Defendants in an amended pleading. However, Plaintiff has not proffered any additional facts that he could add to his Complaint to sufficiently state claims against Lavrador or Clausen.

While the burden is on Defendants to show fraudulent joinder, Plaintiff must maintain some responsibility to show that he could plausibly state a claim on an amended pleading. Because Plaintiff has not made any showing that he could bolster his complaint with factual allegations rising to the level of harassment by the named individual Defendants, the Court must conclude he is unable to do so. The Court thus finds that the individual Defendants were fraudulently joined, and their residency shall be disregarded for purposes of evaluating this Court's jurisdiction. Plaintiffs' Motion is thus DENIED.

**CONCLUSION**

For the reasons just stated, Plaintiff's Motion to Remand (ECF No. 7) is DENIED. IT IS SO ORDERED.

Dated: December 5, 2022

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE